```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARKS & SOKOLOV, LLC,              :
et al.,                            :   CIVIL ACTION
                                   :   NO. 21-04965
          Plaintiffs,              :
     v.                            :
                                   :
MARCIE R. McMINIMEE,               :
CONSERVATOR FOR JACK               :
J. GRYNBERG, et al.,               :
                                   :
          Defendants.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            November 19, 2021

## I.   INTRODUCTION

Presently before the Court is a Motion Preliminary Injunction filed by Plaintiffs Bruce S. Marks and law firm Marks & Sokolov, LLC (collectively "Plaintiffs"). Plaintiffs previously represented Jack J. Grynberg. Plaintiffs ask the Court to enter an injunction against Marcie R. McMinimee, in her capacity as the conservator for Jack J. Grynberg and the Special Administrator of Grynberg's estate, and the estate of Jack J. Grynberg (collectively "Defendants"), that: (1) enjoins Defendants from seeking any relief in a related Colorado state court action that would interfere with or affect this Court's jurisdiction, or interfere with or affect the status quo in the present action, and (2) orders Defendants to extend the time for

Plaintiffs to respond to the complaint in a related Colorado state court action through 14 days following the Court's decision on Plaintiffs' motion to remand this action.

For the following reasons, Plaintiffs' motion will be denied.[1]

## II. BACKGROUND

### A. Grynberg Retains Plaintiffs

Plaintiffs, and other unrelated attorneys, represented Grynberg from 2016-2019 in suits between Grynberg and his family over the control of a Texas corporation. Grynberg was over 84 years old at the time and, according to Defendants, suffered from frontotemporal dementia. Defendants maintain that Grynberg attempted to transfer $100,000,000 from bank accounts of a company owned by his wife and three children to send to a scam artist. Grynberg's family then took emergency steps to restrict his access to company assets. According to Defendants, Plaintiffs then exerted undue influence over Grynberg to retain

---

[1] It is axiomatic that the Court has jurisdiction to determine its own jurisdiction. Based on the removal notice and the complaint filed with the Court of Common Pleas, the Court determines that the parties are diverse and the removing party has a good faith basis to assert that the amount in controversy exceeds $75,000, exclusive of interests and costs. See 28 U.S.C. § 1446(c)(2). A motion to remand has been filed that challenges the amount in controversy in this case. The Court will revisit this jurisdictional question in connection with the motion to remand.

him to sue Grynberg's family. Plaintiffs deny Defendants' assertions.

Marcie R. McMinimee was subsequently appointed a conservator for Grynberg. McMinimee conducted an investigation that purportedly revealed that Plaintiffs and another Colorado attorney exerted undue influence over Grynberg and received more than $10,000,000 in attorneys' fees from Grynberg. Plaintiffs deny this. Defendants then filed a professional liability suit against Plaintiffs and the other counsel that Grynberg had retained in Colorado (the "Colorado Action").[2] In the Colorado Action, Defendants allege that Plaintiffs committed professional negligence and breached their fiduciary duties to Grynberg, who has since passed away.

**B.  Grynberg's Engagement Letter with Plaintiffs**

When Grynberg had retained Plaintiffs as counsel, Grynberg and Plaintiffs signed an engagement letter (the "Engagement Letter").[3] The Engagement Letter included a Dispute Resolution

---

[2]  The caption of the Colorado state court action is: In the Interest of Jack J. Grynberg, Case No. 2019PR31052, Division 204 (District Court, County of Arapahoe, Colorado, September 30, 2021).

[3]  At oral argument, Plaintiffs contended that Grynberg did not personally pay Plaintiffs' legal fees in connection with Plaintiffs' representation of Grynberg. Rather, entities controlled by Grynberg paid Plaintiffs' legal fees. However, the Engagement Letter at issue here is between Plaintiffs and Grynberg personally.

Clause that provided that any dispute arising from Plaintiffs and Grynberg's relationship would be subject to the exclusive jurisdiction of the State Courts of the Commonwealth of Pennsylvania or the Federal District Court for the Eastern District of Pennsylvania (the "Dispute Resolution Clause" or the "forum-selection clause").

After the Colorado Action was filed, Plaintiffs filed suit in the Court of Common Pleas for Montgomery County, Pennsylvania against Defendants alleging that the Colorado Action was filed in violation of the Dispute Resolution Clause in the Engagement Letter. Plaintiffs' underlying complaint seeks specific performance and declaratory relief to enforce the Dispute Resolution Clause and other provisions of the Engagement Letter. On November 5, 2021, the Court of Common Pleas issued an emergency preliminary injunction order enjoining Defendants from interfering with Plaintiffs' rights under the Engagement Letter. According to Plaintiffs, this effectively acted as a stay on the state court proceedings in the Colorado Action. On November 10, 2021, Defendants removed the action to federal court.

On November 12, 2021, after a telephone conference with counsel, the Court entered a temporary restraining order (the "TRO") that provided that "Defendants will not seek any relief in the Colorado state court action that would interfere with or affect this Court's jurisdiction, and Defendants will not seek

4

any relief in the Colorado state court action that would interfere with or affect the status quo in the present action." Ord. at ECF No. 12. The TRO entered by this Court was not as expansive in scope as the temporary restraining order entered by the Court of Common Pleas and is set to expire on November 19, 2021. The Court will now address the Plaintiffs' request for a preliminary injunction.

### III. LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy" that courts should grant "only in limited circumstances." Holland v. Rosen, 895 F.3d 272, 285 (3d Cir. 2018) (quotation omitted), cert. denied, 139 S. Ct. 440 (2018). The party moving for such relief must demonstrate:

> (1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve the public interest.

Id. at 285-86 (citation omitted). Because "the first two factors are prerequisites for a movant to prevail," the Court need not reach the third and fourth factors if it determines that a plaintiff has failed to establish the first two. Id. at 286.

**IV. DISCUSSION**

    **A. The Anti-Injunction Act**

Plaintiffs request that the Court issue an injunction that: (1) extends the TRO which provides that Defendants will not seek any relief in the Colorado Action that would interfere or affect this Court's jurisdiction or the status quo in this case, and (2) orders Defendants to extend the time for Plaintiffs to answer the Colorado complaint through 14 days following this Court's decision on Plaintiffs' outstanding motion to remand.[4]

Defendants argue that the requested injunction would effectively result in a stay of the Colorado Action, and would thus violate the Anti-Injunction Act.[5] Plaintiffs cite to the All Writs Act which allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. However, the Anti-Injunction Act imposes a limit on the All Writs Act. See In re Diet Drugs Prods. Liab. Litig., 369 F.3d 293, 305 (3d Cir. 2004) (hereafter

---

[4] Plaintiffs still appear to view "maintaining the status quo" as requiring Defendants to comply with the forum-selection clause. See Pls.' Reply at 15, ECF No. 18 ("Here, a return to the status quo is as simple as a requirement that the parties resolve disputes in a Pennsylvania forum per the 2016 Engagement Letter.")

[5] Defendants also maintain that ordering Defendants to consent to an extension of Plaintiffs' time to file an answer in the Colorado Action would also effectively act as a temporary stay of the state court proceedings.

"In re Diet Drugs II") ("The authority the All Writs Act imparts to district courts is limited, however, by the Anti-Injunction Act . . . ."). Thus, under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added). Outside of the three exceptions, the Anti-Injunction Act prohibits courts from enjoining state court proceedings. In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 364 (3d Cir. 2001).[6]

Though the Third Circuit has yet to address this specific issue, several district courts in other circuits have found that the "Anti-Injunction Act contains no exception for parties proceeding in state court in violation of a forum selection clause." MPVF Lexington Partners, LLC v. W/P/V/C, LLC, 148 F. Supp. 3d 1169, 1182 (D. Colo. 2015); see id. (noting that though the plaintiffs may have been able to seek an injunction in state

---

[6] Plaintiffs, in a letter dated November 18, 2021, cite to cases they purport support the argument that a state court may be able to enjoin a parallel proceeding in another state court, see, e.g., BE&K Eng'g Co., LLC Rocktenn CP, LLC, No. 8837, 2014 WL 186835, at *1, *23 (Del. Ch. Jan. 15, 2014), aff'd 103 A.3d 512 (Del. 2014), Rouse v. Tex. Capital Bank, N.A., 394 S.W.3d 1, 6-9 (Tex. App. 2011). However, these are inapposite. Federal courts, unlike state courts, are bound by the provisions of the Anti-Injunction Act.

court to enforce a forum-selection clause, the removal to federal court "eliminates that option because federal courts are subject to the Anti-Injunction Act.").

For example, in Bridgeport Machines, Inc. v. Alamo Iron Works, Inc., the plaintiff, relying on the All Writs Act, filed a motion seeking to enjoin an underlying Texas state court proceeding. 76 F. Supp. 2d 209, 211 (D. Conn. 1999). The plaintiffs argued, in part, that the Texas state court action was improper because the defendant had consented to a forum-selection clause to resolve the dispute in Connecticut. Id. at 211-213. The Bridgeport court looked to the Anti-Injunction Act to determine whether it was permissible to enjoin the state court action. The Bridgeport court explained that "[t]he purpose of the Anti-Injunction Act is 'to prevent needless friction between state and federal court.'" Id. at 211-12 (quoting Mitchum v. Foster, 407 U.S. 225, 232-233 (1972)). The Bridgeport court noted that generally, "the question of whether to stay the proceedings in a state court is never one to be taken lightly, as it impinges on the very delicate balance struck between the federal and state judicial systems." Id. at 212 (quoting Olin Corp. v. Ins. Co. of N. Am., 807 F. Supp. 1143, 1152 (S.D.N.Y. 1992)). "The Anti-Injunction Act's three exceptions have been strictly construed by courts with the general proviso that 'any doubts as to the propriety of a federal injunction against state

court action should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.'" Id. (quoting Atl. Coast Line R. Co. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 297 (1970)). The Bridgeport court held that though the case may have been improperly brought in Texas based on the forum-selection clause, the situation still did not fall "within any exception to the Anti-Injunction Act," and so the court declined to enjoin the Texas state court action. Id. at 213-214.

Similarly, in Northfield Ins. Co. v. Odom Indus., Inc., the court refused to enjoin a parallel state court proceeding to prevent the "state court from interfering with [the federal] court's consideration and disposition of [the] case" despite the existence of a forum-selection clause. 119 F. Supp. 2d 631, 635 (S.D. Miss. 2000). Like in Bridgeport, the Northfield court explained that the federal Anti-Injunction Act prohibited the court from interfering in the state court proceeding. Id.; see also, e.g., Bank of Oklahoma, N.A. v. Tharaldson Motels II, Inc., 743 F. Supp. 2d 1080, 1084 (D.N.D. 2010) ("[C]ourts have found the Anti-Injunction Act precludes ordering an injunction against continuing state court litigation where enforceability of forum and venue selection clauses were at issue."); Great Lakes Dredge & Dock, Co. v. Larrisquitu, No. 06-3489, 2007 WL 2330187, at *4-*6, *8 (S.D. Tex. Aug. 15, 2007) (finding that

enjoining a state court proceeding would violate the Anti-Injunction Act despite the existence of a forum-selection clause).

Further, any argument that an exception to the Anti-Injunction Act applies is unavailing. As previously noted, the Anti-Injunction Act does not apply where an injunction is (1) expressly authorized by Act of Congress, (2) where necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate the federal court's judgments. 28 U.S.C. § 2283. Plaintiffs argue that the second exception applies. Plaintiffs aver that this Court may issue an injunction that would stay the state court proceedings because it is "necessary in aid of its jurisdiction." Id.

> In In re Diet Drugs II, the Third Circuit noted that:
>
> [A]n injunction is necessary in aid of a court's jurisdiction only if some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

369 F.3d at 306 (citing Atl. Coast Line R. Co., 398 U.S. 281 at 295) (internal quotation marks omitted). The Third Circuit explained that "the state action must not simply threaten to reach judgment first, it must interfere with the federal court's own path to judgment." In re Diet Drugs, 282 F.3d 220, 234 (3d Cir. 2002) (hereafter "In re Diet Drugs I"). However, there are

a few scenarios where it is appropriate to apply the "in aid of its jurisdiction" exception. The Third Circuit found that it is appropriate to apply the exception in in rem cases because "the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached." Id. (quoting Kline v. Burke Const. Co., 260 U.S. 226, 292 (1922)). Next, courts may apply the exception "to protect [the] exclusive federal jurisdiction of a case that has been removed from state court." Id. at 234-235. Courts may also apply the exception in cases involving "complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction," or if it would disrupt a potential settlement. Id. at 235-236.

None of the situations identified above apply here. Further, federal courts in other jurisdictions have declined to apply this exception in cases involving forum-selection clauses. In Larrisquitu, the court declined to apply this exception to the Anti-Injunction Act because "the state-court suits [did] not threaten this federal court's ability or authority to decide issues raised in both state and federal cases." 2007 WL 2330187, at *6. The Larrisquitu court found that the "state-court actions

11

do not impair this court's flexibility and authority to decide whether the forum-selection agreements are valid and enforceable." Id. (internal quotation marks omitted); see also Bridgeport, 76 F. Supp. 2d at 213 (declining to apply the "in aid of its jurisdiction" exception because the "exception has generally been applied only where 'the court's jurisdiction is in rem, or where the court has been heavily involved in settlement negotiations or the formulation of a consent decree.'") (quoting Olin Corp., 807 F. Supp. at 1152); Northfield, 119 F. Supp. 2d at 635-36 (same).

"The exceptions in the Anti-Injunction Act are to be construed narrowly." In re Diet Drugs I, 282 F.3d at 233. As the Supreme Court has noted, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Atl. Coast Line R. Co., 398 U.S. at 297. Accordingly, the Court concludes the Anti-Injunction Act prevents this Court from entering an injunction that would effectively stay the Colorado Action.

B. **The Preliminary Injunction Factors**

Even if the Anti-Injunction Act did not prevent the Court from entering an injunction, under the circumstances of this case, Plaintiffs cannot meet the relevant factors that would

12

allow for the issuance of an injunction. See Fed. R. Civ. P. 65(b).

### 1. Likelihood of Irreparable Harm

Injunctive relief is available only where the movant will suffer irreparable harm absent such relief. 431 E. Palisade Ave. Real Est., LLC v. City of Englewood, 977 F.3d 277, 283 n.21 (3d Cir. 2020) (quoting Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017). Irreparable harm is an injury "of a peculiar nature" such that "compensation in money alone cannot atone for it." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 727 (3d Cir. 2004) (internal quotation marks and citation omitted).

Here, the Court must consider if Plaintiffs will be irreparably harmed if: (1) Defendants engage in an act in the Colorado Action that would interfere with this Court's jurisdiction or affect the status quo in this case, and (2) if the Court does not enter an order directing Defendants to extend the time for Plaintiffs to respond to the Colorado complaint. Plaintiffs seek specific performance and declaratory relief that the forum-selection clause in the Engagement Letter is enforceable. Thus, the Court must consider whether Plaintiffs will be irreparably harmed if Defendants engage in an act in the Colorado Action that would interfere with Plaintiffs' ability to seek such relief in this Court.

13

Because Plaintiffs can bring the forum-selection clause to the attention of the court in the Colorado Action, Defendants contend that Plaintiffs are not subject to a harm that cannot be addressed by an alternative legal remedy. Defendants aver that Plaintiffs have an adequate remedy at law because Colorado courts must consider the enforceability of a forum-selection clause at the outset of the proceedings. See Edge Telecom, Inc. v. Sterling Bank, 143 P.3d 1155, 1161 (Colo. App. 2006). Defendants maintain that Plaintiffs can raise the forum-selection clause in the Colorado Action, and if the Colorado court deems the clause enforceable, the Colorado may dismiss the Colorado Action.

In their reply, Plaintiffs cite to several cases which they purport to stand for the proposition that courts have found a party will suffer irreparable harm if a forum-selection clause is not enforced. However, the cases that Plaintiffs cite involve situations where a party sought to enjoin a foreign court or an administrative agency from proceeding with an action. See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., No. 10-1020, 2010 WL 5559750, at * 25 (D.N.M. Nov. 30, 2020) (finding plaintiffs would suffer irreparable harm "of the deprivation of their bargained-for forum if the Court does not issue injunctive relief" enjoining a proceeding before the International Trade Commission ("ITC")); Macquarie Holdings USA Inc. v. Rode, No.

14

12-00093, 2012 WL 12882417, at (C.D. Cal. Jan. 17, 2017) (enjoining a FINRA arbitration); InterDigital v. Pegatron, No. 15-02584, 2015 WL 3958257, at *9, *11 (N.D. Cal. June 29, 2015) (enjoining Defendant from prosecuting an action in Taiwan's intellectual property court); Ciena Corp. v. Nortel Networks, Inc., No. 05-14, 2005 WL 1189881, at *7, *12 (E.D. Tex. May 19, 2005) (enjoining an ITC action); Int'l Fashion Prods., B.V. v. Calvin Klein, Inc., No. 95-0982, 1995 WL 92321, at *2 (S.D.N.Y. March 7, 1995) (enjoining plaintiff from prosecuting an injunction in the District Court of Amsterdam in the Netherlands). Plaintiffs do not cite a single case where a court has found irreparable harm exists in the context of a parallel state court proceeding, much less where a forum-selection clause is at issue.

In the present case, the Colorado state court has a recognized mechanism for considering a forum-selection clause. As noted, under Colorado law, a Colorado court must consider the forum-selection clause contained in the Engagement Letter if raised by Plaintiffs. See Cagle v. Mathers Family Trust, 295 P.3d 460, 464 (Colo. 2013) ("The common view is that forum selection clauses should be enforced").[7] Further, there appears

---

[7] Plaintiffs also argue that they would lose the opportunity for a Pennsylvania forum to apply Pennsylvania law. To the extent the Engagement Letter contains a choice of law clause, Plaintiffs may also raise this choice of law issue with the

to be no legal impediment that would prevent Plaintiff from raising the forum-selection clause with the Colorado court. There is also no evidence that the Colorado court cannot fairly and properly address this issue. Accordingly, Plaintiffs will not be irreparably harmed if the Court does not enter the requested reliefs because Plaintiffs can still raise the issue of the forum-selection clause in the Colorado Action.[8]

    2.   <u>Likelihood of Success on the Merits</u>

Injunctive relief is also available only where the movant can show they are likely to succeed on the underlying merits. Thus, there must be a reasonable probability of Plaintiffs succeeding on their claims. <u>Singer Mgmt. Consultants, Inc. v. Milgram</u>, 650 F.3d 223, 229 (3d Cir. 2011).

---

Colorado court and have the Colorado court apply Pennsylvania law.

[8]    Plaintiffs argue that "the unbridled threat of the continuation of the violation of the Dispute Resolution Clause [] threatens Plaintiffs' reputation of having enforceable contracts with its clients" and "Plaintiffs are at a significant risk that Defendants will capitalize on the Colorado forum and seek an injunction against Plaintiffs proceeding in Pennsylvania, in specific violation of the Dispute Resolution Clause." Pls.' Mot. at 11, ECF No. 6 (internal quotation marks omitted). There is no evidence that this will harm Plaintiffs' reputation. As Defendants note, Plaintiffs attached a copy of the Colorado complaint when they initially filed this action in the Court of Common Pleas. That filing is public. Accordingly, it does not appear Plaintiffs' can meaningfully argue the existence of the Colorado Action will harm their reputation when they have filed a public copy of the complaint in a Pennsylvania court.

In their underlying complaint, Plaintiffs seek specific performance and a permanent injunction that the forum-selection clause in the Engagement Letter controls, declaratory judgment that the Pennsylvania statute of limitations controls based on a term in the Engagement Letter, declaratory judgment that Grynberg's estate has no right to recover attorneys' fees, and a claim of unjust enrichment.

Specific performance and declaratory relief to enforce the terms of a contract are only available when the contract is valid and enforceable. See, e.g., Straus v. United States Postal Serv., 296 F. Supp. 3d 705, 711 (E.D. Pa. 2017) ("[T]he party seeking specific performance must establish that there is a valid and enforceable contract, that the party substantially performed its part of the contract, and that both parties can perform."). Defendants argue that because Grynberg did not have the mental capacity to enter into the relevant engagement agreement with Plaintiffs, the contract is not enforceable so the Court cannot enforce the provision of the forum-selection clause by way of specific performance or declaratory judgment. Defendants contend that because Grynberg was suffering from frontotemporal dementia, he did not have the capacity to enter into the contract with Plaintiffs. For support, Defendants rely on an expert report regarding Grynberg's legal capacity and testimony from an evidentiary hearing in an underlying trial

17

involving Grynberg in which Grynberg's geriatrician testified that Grynberg had shown signs of dementia since 2015. Defs.' Resp. Exh. C, ECF No. 14-3.

As the Court noted in the hearing on November 12, 2021, at this point, there is a genuine dispute as to whether Grynberg had the legal capacity to agree to the terms of the Engagement Letter. Because the majority of Plaintiffs' claims require the Court to find the Engagement Letter is an enforceable contract, Plaintiffs cannot yet show that at this time that it is likely that they will succeed on the merits of their underlying claims.

Because neither irreparable harm nor the likelihood success on the merits weigh in favor of Plaintiffs at this stage of the proceedings, the Court need not consider the remaining factors. See 431 E. Palisade Ave. Real Est., LLC, 977 F.3d at 283 n.21 (noting that "the moving party must establish the first two factors and only if these 'gateway factors' are established does the district court consider the remaining two factors." (quoting Greater Philadelphia Chamber of Commerce v. City of Phila., 949 F.3d 116, 133 (2020)).

## V. CONCLUSION

For the foregoing reasons, the Court will deny the motion for a preliminary injunction and will allow the temporary restraining order to expire. An appropriate order will follow.